The People of the State of Illinois, Plaintiff-Appellee, v. Grant Jones, Defendant-Appellant.

Gen. No. 50,267.

First District, First Division.

October 3, 1966.

Robert J. Burdett, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Grant Jones, was indicted in July of 1964 for the unlawful possession of narcotic drugs. Defendant moved to suppress heroin recovered from his person at the time of his arrest, and after a preliminary hearing that motion was denied. In a bench trial, the court found the defendant guilty and sentenced him to a term of two to three years in the penitentiary.

In this appeal, defendant makes the following contentions: (1) His arrest was invalid, and the motion to suppress wrongfully denied, because the arrest was made on the basis of an unverified tip from an informer whose reliability was not shown by the State; (2) the court's refusal to permit identification of the informer during the preliminary hearing was a violation of defendant's right to cross-examine a material witness; (3) the court erred in permitting a police officer to testify in the preliminary hearing as to what he had been told by the informer at the scene of the arrest; (4) a statutory provision prohibited the introduction into evidence of information divulged by the informer, either in testimony by the informer himself or by the hearsay testimony of the police officers; (5) possession of heroin by the defendant was not proved beyond a reasonable doubt; and (6) defendant, as a narcotic addict, did not possess the legal capacity requisite for criminal responsibility for the act of possessing narcotics.

The testimony at the hearing on the motion to dismiss, which was more extensive than that in the case in chief, was briefly as follows. Two Chicago police officers, John Campbell and Howard Anthony, testified that at about 11 p. m. on July 2, 1964, at 39th and State

Streets in Chicago, they had a conversation about the defendant with a paid informer who was also a narcotics addict. Officer Campbell testified that he had spoken to this informer concerning narcotics about ten or twelve times in the past, and that the information he supplied had led to arrests and convictions and had been, "very reliable." The officers testified the informer told them the defendant and a man named "Blood," with whom they were familiar, were selling narcotics at 35th Street and Indiana Avenue. "He stated that narcotics addicts would give Blood the money and Grant Jones would go with Blood and get the narcotics and bring . . . the narcotics back to the addicts." The informer and Officers Campbell and Anthony then proceeded to 35th Street and Indiana Avenue. The informer walked across the street and toward a group of persons standing on the corner. Shortly thereafter, a group of five or six persons, including the defendant and Blood, moved away from the larger group and northward on Indiana Avenue. The testimony of the officers is in conflict as to whether the informer was in this group. The group stopped, and the officers, who had observed all this from a doorway across the street, saw something exchanged. The informer then came across the street, and told Officer Campbell, ". . . that Blood and Jones had just took the money from the three addicts, . . . and that Blood and Jones is going to cop, that is, going to get the narcotics. And Jones would bring it back." Jones and Blood then left the group and walked to a building at 3365 S. Indiana Avenue. Jones emerged from the building about ten or fifteen minutes later, and proceeded south on Indiana Avenue. Officer Campbell testified that after Jones had walked past him and Officer Anthony, he called out, "Jones, what have you got in your hand?" Campbell testified Jones' hand was closed at the time, and he could see nothing. He further testified that Jones stopped, looked around at Campbell, and then dropped

335

two tinfoil packages to the pavement. He was arrested, and a third package was recovered from his hand.

The defendant testified that as he was leaving the building he was approached by a man whom he did not know, but who he later learned was Officer Campbell, holding a drawn pistol. When Campbell asked him what he was holding in his hand, he answered that he didn't have anything in his hand, whereupon Campbell struck him on the wrist with the pistol. Something dropped from his hand when he was struck, defendant testified; and he was instructed, ". . . to pick up two packages of narcotics, or three packages of narcotics up off the sidewalk." The defendant did not know Campbell was a police officer until he was joined by another man whom defendant knew to be a police officer.

■ Defendant's first contention is that the motion to suppress was wrongfully denied because the arrest was made on the basis of an unverified tip from an informer whose reliability was not shown by the State. We note, at the outset, that if Officer Campbell's version of the arrest is believed, the defendant dropped two packages of narcotics on the sidewalk in plain sight of the officer before there had been any arrest or search. Under such circumstances, the police had probable cause to arrest and search the defendant, and there is no merit in the motion to suppress.

■ ■ Defendant's version of the arrest, however, is that the contents of his closed hand were forcibly removed by a police officer using a drawn pistol, all of which was denied by the officers. If such was the case, it was incumbent upon the State to show probable cause for the arrest and search. In the recent case of People v. McClellan, 34 Ill2d 572, 218 NE2d 97, our Supreme Court in reversing a conviction for the unlawful possession of narcotics stated the standard for probable cause as follows:

Probable cause for an arrest may, of course, be based upon information supplied by an informant, if the reliability of the informant has been previously established (People v. Durr, 28 Ill2d 308) or independently corroborated. People v. McFadden, 32 Ill2d 101 (34 Ill2d at 574).

The court pointed out that the past reliability of the informer in that case had not been shown because he was not known to the officers. They further observed that there was no independent corroboration of the tip by the presence of other factors predicted by the informer, inasmuch as the tip had been no more than, "That dude is dirty."

■ In the case at bar, however, the record reveals the presence of both of these indications of the reliability of the tip. Officer Campbell testified that he did some undercover work with the informer on some of the previous investigations and that tips from this informer had led in the past to many arrests and convictions, and had been, "very reliable." Furthermore, the narcotics purchase transaction described to the officers by the informant in the tip, including the respective roles of the defendant and of Blood, seemed to correspond with the activities the officers testified they observed at 35th Street and Indiana Avenue. Both of these factors clothed the tip with reliability, and therefore constituted probable cause for the arrest and accompanying search. We therefore hold that under either version of the arrest and search, the court was correct in denying the motion to suppress.

■ Defendant contends that the court erroneously permitted Officer Campbell to testify as to what he was told by the informer at the scene of the arrest. While defendant concedes that hearsay evidence as to the contents of the informer's tip is admissible in a hearing on a motion to suppress, it is his position that the State

cannot offer as corroboration of that tip hearsay testimony as to what the informer said to the police officer at the scene of the arrest. No authority is offered in support of this claimed exception to the general rule that hearsay is admissible in the determination at a preliminary hearing of the presence of probable cause for arrest. People v. LaBostrie, 14 Ill2d 617, 153 NE2d 570; United States v. Li Fat Tong, 152 F2d 650. But even beyond this, it is clear from the record that the movements of the defendant and his companions, which the officers saw themselves constituted corroboration of the tip originally given them by the informer, even before the informer explained to them the significance of the transaction.

 Also during the hearing on the motion to suppress, Officer Campbell was asked on cross-examination for the name of the informer. The State's objection to the question was sustained. Defendant contends on appeal that this ruling was a violation of his right to confront and cross-examine a material witness.

The attack upon the so-called "informer's privilege" which defendant makes in this case should be distinguished from the related but different attack adjudicated in Roviaro v. United States, 353 US 53, and in People v. Mack, 12 Ill2d 151, 145 NE2d 609. In those cases, the holdings as to the right to withhold the identity of the informer turned on whether the testimony of the informer as to the circumstances surrounding the offense or the arrest was potentially crucial to the preparation of the defense. In Roviaro, the informer had participated in the commission of the crime, and testimony was offered at the trial as to conversations between the defendant and the informer. The United States Supreme Court held that fundamental fairness required that the informer be identified and thereby made available to the defendant. In Mack, however, our Supreme Court

distinguished Roviaro on the grounds that in Mack the informer had neither participated in the crime nor was present at the arrest. The Court held it did not appear that the testimony of the infomer would be relevant or helpful to the defense, and affirmed the conviction.

In the case at bar, the defendant makes no claim that the informer was either a participant in the crime or present at the time of the arrest. His line of attack against the informer's privilege is that the presence or absence of probable cause to arrest the defendant turned largely upon the reliability of the informer; and that therefore an opportunity to cross-examine the informer was crucial to his defense. Once again, we must note that under the version of the arrest given by the officers, this contention is without merit, because there can be no question that there was probable cause to arrest and search the defendant. But even under defendant's version of the arrest, the result is the same. A similar contention was made and rejected in People v. Durr, 28 Ill2d 308, 192 NE2d 379. The court pointed out that the reliability of the informer had been established by the testimony of the officer that previous information from this informer had proved to be accurate. After observing that, as in Mack, the informer neither participated in the crime nor was present at the arrest, the Court affirmed the conviction, holding:

". . . determination of probable cause by reliance upon the officer's testimony as to the reliability of an otherwise anonymous informer is likely to produce evils of far less consequence than those resulting from depriving the public of an important source of information necessary to the suppression of a particularly vicious form of crime." (28 Ill2d at 315).

This position was restated more recently in People v. Nettles, 34 Ill2d 52, 55, 213 NE2d 536. Under these

authorities, therefore, we hold that whichever version of the arrest and search is accepted, the defendant is not entitled to disclosure of the identity of the informer.

■ Defendant next contends that the information supplied by the informer was inadmissible by statute, and therefore could not be rendered competent by the fact that it was introduced as hearsay in the testimony of the officers. The statute relied upon is Ill Rev Stats, ch 38, § 608a (1963), which provides in part that when a public law enforcement officer employs a detective or investigator on a compensation basis other than that of time, the detective or investigator is incompetent to testify as to information or evidence acquired by him, and the evidence so acquired is inadmissible in any court in the State for any purpose. Defendant contends that the informer in this case, who was admittedly paid for his information, received compensation on a "job" basis, and that therefore the information which he gave the officers and to which the officers testified was inadmissible. We see no merit in this contention, for an informer cannot be classed as a "detective or investigator" within the contemplation of this statute.

■ Defendant claims that his possession of heroin was not proved beyond a reasonable doubt. This argument seems to rest upon defendant's conclusion from the evidence that while he had only three envelopes at the time of his arrest, four were recovered from the sidewalk and one from his hand; and since Officer Campbell only field tested one package and the police chemist also tested only one, the State did not prove beyond a reasonable doubt that any of the packages in the possession of defendant contained heroin. We have reviewed the record carefully, and find the evidence overwhelming that there were just three packages involved. Defendant's claim that there were more apparently rests upon the testimony of Officer Anthony that when Jones was asked what he had in his hand, "He dropped two

■■■■■■■

. . . four packages to the ground." This ambiguous answer, when considered in the context of a record which is otherwise clear that there were only three packages, is not sufficient to raise a reasonable doubt.

Finally, defendant contends that since he was a narcotics addict he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law; and that therefore under Ill Rev Stats, ch 38, § 6–2, (1963) he is not criminally responsible for his conduct. He alleges that a narcotics addict is a person suffering from a disease analogous to mental illness or insanity, and that for an addict to possess the drug to which he is addicted is to do an act over which he has no control.

■■ This contention was not made by defendant in the course of his trial, but is raised for the first time on appeal. In People v. Milligan, 28 Ill2d 203, 190 NE 2d 753, the court held that the defense of insanity at the time the crime was committed is an affirmative one and unless raised is waived. 28 Ill2d at 205. We cannot, therefore, consider this point for the first time on appeal.

The judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.